**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Gerald Elliott, | : | Case No. 1:09CV2260 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination

denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act),

42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act,

42 U. S. C. §§ 1381 *et seq.*  Pending are the parties' briefs on the merits (Docket Nos. 12 & 17).  For

the reasons that follow, the Magistrate recommends that the Court affirm the Commissioner's decision.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB on January 25, 2006, alleging that his disability

began on January 1, 2003 (Tr. 96-99, 99-101)[1].  Plainitff's request for benefits was denied initially and

---

[1]

At the hearing, the ALJ stated that the applications were filed on January 6, 2006, rather than
January 25, 2006.

upon reconsideration (Tr. 52-56; 55-57, 63-65; 60-62).  On January 22, 2009, Plaintiff, represented by

counsel, Vocational Expert (VE) Evelyn Sindelar, and Medical Expert (ME), Dr. John Conomy,

appeared and testified at an administrative hearing (Tr. 392).  At the hearing, Plaintiff amended his onset

date to June 5, 2007, and withdrew his disability insurance claim because his insurance status expired

on December 31, 2003, before his amended onset date (Tr. 397-398).  The ALJ issued an unfavorable

decision on March 4, 2009 (Tr. 15-22).  The Appeals Council denied Plaintiff's request for review on

March 9, 2009 (Tr. 12-14).  Plaintiff filed a timely action seeking judicial review of the Commissioner's

final decision.

## II.  JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d

830, 832 -833 (6th Cir. 2006).

## III.  FACTUAL BACKGROUND

### A.       PLAINTIFF'S HEARING TESTIMONY.

Plaintiff is the custodial parent of his children (Tr. 409).

In January 2007, Plaintiff began classes at Technological Initiative Learning Institute (TILI),

pursuing a degree in information technology (Tr. 405).  Maintaining a grade point average of 3.2,

Plaintiff has completed more than half of the courses required for his degree (Tr. 406).

In August 2008, Plaintiff obtained employment in a work study program at TILI.  During the

eleven hours weekly that he worked, Plaintiff provided computer assistance to students.  Although he

was seated most of the time, his job involved standing and walking (Tr. 404, 405, 407).

In 2007, Plaintiff was employed by Alliance Staffing Solutions, a specialized staffing solutions

partnership.  One of his job assignments included using a two-wheeler to carry cases of beer and other

items.  The pain in Plaintiff's feet and back interfered with his ability to perform this work (Tr. 398, 399, Www.alliancestaffingsolutsions.com.).

While employed for Robert Half International, a professional staffing and consulting firm, Plaintiff entered data into the computer and managed accounts payable and accounts receivable (Tr. 426.wwwroberthalfinternational.com).  Plaintiff's longest assignment was working for PageNet, a wireless messaging company.  He was responsible for entering data into the computer, accounting and making adjustment to inventory (Tr. 426, 427, www.pagenet.com).

Plaintiff has experience operating machinery that removes extra rubber from molding (Tr. 400). While operating the machine, Plaintiff stood for six and a half hours and lifted several fifteen to twenty pound boxes (Tr. 403).  He was terminated after being injured on the job (Tr. 400, 402).

Plaintiff was a mail handler for six months.  He was promoted to letter carrier.  He worked as a carrier for approximately one year (Tr. 428, 429).  As a letter carrier, Plaintiff drove for two hours and stood for four hours (Tr. 431).

Plaintiff impairments include dyspnea, chronic back pain, depression, right arm injury, arthritis in both hands, uncontrolled asthma, restricted lung disease and plantar fasciitis.  Plaintiff claimed that he could not work because he could not breathe without assistance (Tr. 396, 400).  Walking and climbing stairs affected his breathing capacity (Tr. 409-410).

Plaintiff was plagued with pain that migrated through his feet.  His heels and arches were constantly in pain (Tr. 411).  As treatment, his physician suggested the use of gel inserts for his shoes and enrollment in a smoking cessation program (Tr. 413).  Plaintiff's physician linked smoking to the problems in his feet (Tr. 414).

Plaintiff alleged that his back pain was so pervasive that he could not find a comfortable position

(Tr. 412).  Consequently, he took 800 mg. of Ibuprofen two to three times daily which caused sleepiness accompanied by a low level of energy (Tr. 412).

**B.      ME TESTIMONY.**

The ME, a neurologist, characterized Plaintiff's impairments as chronic lung disease, axial back pain and chronic foot pain (Tr. 416-417).  The principal impairment, moderately severe chronic lung disease, contained elements of emphysema and spastic or reactive airway disorder (Tr. 418, 419).

The ME found the chronic low back pain to be a credible complaint (Tr. 420).  However, the low back pain did not rise to the level of a severe impairment, as it was considered uncomfortable but not severe (Tr. 419, 420).

The ME found the foot pain to be a credible complaint Tr. 420).  The foot pain was not severe, however,  as it was being treated by relatively simple drugs (Tr. 419).

The ME opined that the depression was "figurative."  It was not a severe impairment (Tr. 420).

The ME concluded that these impairments, individually or in combination, did not meet or equal any of the listings (Tr. 423).

The ME suggested that Plaintiff avoid exposure to irritants such as fumes, odors, dust and gases. Plaintiff could walk 300 feet at a time and one to two hours during an eight hour workday (Tr. 421).

**C.      VE TESTIMONY.**

The ALJ asked that the VE consider in the hypothetical questions whether Plaintiff could perform past relevant work either as actually performed or as generally performed in the national economy (Tr. 436).  Limiting the residual functional capacity (RFC) to light exertional level, lifting up to twenty pounds occasionally, lifting and/or carrying up  to ten pounds frequently, standing or walking for approximately two hours in an eight hour work day, the ability to sit or stand alternately at will and

a limitation to avoid all exposure to fumes, odors, dust and gases, the hypothetical person could perform post relevant clerical work which he performed at Robert Haff International as a data entry clerk at the sedentary level (Tr. 437, 440).

The ALJ asked the VE to consider whether there were unskilled occupations that someone of Plaintiff's age, education, college credits and relevant work experience could perform at the **light** exertional level.  The VE explained that this individual could perform a weld inspecting job, a bench assembler and a light bulb assembler (Tr. 438, 439).  There were approximately 4,000, 17,000, and 280,000 weld inspector jobs in Northwest Ohio, the State of Ohio and the United States, respectively.

There were approximately 8,500, 49,200 and 700,000 bench assembler jobs in Northwest Ohio, the State of Ohio and the United States, respectively (Tr. 438).

There were approximately 3,590, 20,500, 289,200 light bulb assembler jobs in Northwest Ohio, the State of Ohio and the United States, respectively (Tr. 439).

Assuming a person of Plaintiff's age, education and work history, the VE testified that there was also unskilled, sedentary work that he could perform.  Specifically, a dowel inspector, a table worker and lens block gauger.  A dowel inspector inspected dowels for flaws.  Work as a dowel inspector required training that was beyond a short demonstration up to and including a month's training.  There were approximately 2,800 jobs in Northeast Ohio, in the State of Ohio 13,800, and in the United States economy 224,100 (Tr. 440).

A table worker performed at the sedentary level would also accommodate Plaintiff's limitations. This job required training that was beyond a short demonstration up to and including a month's training. There were approximately 2,800 table worker jobs in Northeast Ohio, 13,700 in the State of Ohio and 224, 100 in the nation (Tr. 441).

5

A third job that would equally accommodate Plaintiff's limitations was a lens block gauger or a worker to set up frames for glasses.  This job required training that was beyond a short demonstration up to and including a month's training.  In Northeast Ohio, there were 3,920 jobs, in the State of Ohio 18,000 and in the United States, 305,043 (Tr. 441).

Assuming that the hypothetical plaintiff had the capacity to(1) lift no more than twenty pounds occasionally, (2) lift and /or carry up to ten pounds frequently, (3) stand for approximately two hours in an eight hour workday, allowing for a sit/stand option, (4) avoid all exposure to irritants, (5) adhere to simple, routine and repetitive tasks, free of fast paced production requirements, and (6) adhere to superficial interaction with the general public, he or she could perform Plaintiff's  past relevant clerical work (Tr. 442).

### Iv.  SUMMARY OF MEDICAL EVIDENCE

Plaintiff was treated at Care Alliance, a comprehensive medical care facility, for numerous complaints.  His treating physician prescribed Flexeril for chronic back pain on February 17, 2006 (Tr. 193).  On March 16, 2006, the attending physician at Care Alliance addressed issues related to back pain, asthma and lost vision (Tr. 200).  On April 10, 2006, Plaintiff was treated for flu-like symptoms (Tr. 201).  In May 2006, Plaintiff was treated for back pain.  Plaintiff was using Albuterol twice daily (Tr. 198).  He presented to the Care Alliance in August 2006 with severe pain (Tr. 196).  In January 2007, Plaintiff was treated for inflammation of the hair follicles and back pain.  Plaintiff was treated on March 1, 2007, for possible reactions to Ibuprofen (Tr. 189).  On June 6, 2007, Plaintiff was treated for uncontrolled asthma, back pain and inflammation of the hair follicles (Tr. 187).

Plaintiff underwent treatment for several illnesses at MetroHealth Medical Center (MetroHealth).  On July 27, 2005, Plaintiff presented with numbness and tingling in all digits of his hands.  As he waited to be treated, the feeling returned to his fingers (Tr. 332).  The results from the x-ray administered on

6

January 20, 2006, showed no evidence of acute cardiopulmonary process (Tr. 340).  On February 1, 2006, Plaintiff was treated for a flu-like illness (Tr. 302, 365-366).  It was noted on March 20, 2006, that Plaintiff's lungs were mildly and symmetrically over aerated.  There was some mild prominence in the area of the lung around the hilum bilaterally (Tr. 339).  Plaintiff was treated for flu-like symptoms on April 10, 2006 (Tr. 201).

On March 24, 2006, Dr. Sally A. Felker, Ph. D., a psychologist, conducted a clinical interview and mental status examination.  No diagnostic tests were administered (Tr. 359).  Dr. Felker diagnosed Plaintiff with depression of an unspecified type.  Dr. Felker noted adult antisocial behavior and possibly mild restrictions in Plaintiff's ability to concentrate and his capacity to carry out tasks was somewhat compromised because of depressive symptoms (Tr. 361).  During the interview, Dr. Felker noted the presence of moderate restrictions in occupational functioning (Tr. 362).

Dr. Shu Que Huang, M.D., MetroHealth**'s** certified medical examiner, conducted a clinical and physical examination on March 27, 2006 and concluded that although Plaintiff was suffering the continued effects of a car accident in 1993, he was able to function at a moderate level of physical demand (Tr. 354).  Dr. Huang opined after conducting manual muscle testing that Plaintiff could raise his shoulders, elbows, wrists, fingers, hips, knees, feet and great toes against maximal resistance (Tr. 355).  Plaintiff's range of motion in the cervical spine, shoulders, elbows, wrists, hips, knees, ankles and hands-fingers was within the normal range (Tr. 356-358).

After conducting a psychiatric review and mental RFC assessment on April 11, 2006, Dr. John Waddell diagnosed Plaintiff with a depressive disorder of an unspecified type and determined that Plaintiff had moderate limitations in his ability to complete a normal work day and  week and the ability to interact appropriately with the general public (Tr. 347, 349).

A chest X-ray administered at MetroHealth on September 18, 2006 was compared to the results

7

of the X-rays conducted on March 20, 2006.  There was no acute cardiopulmonary disease present (Tr. 334, 338).  Albuterol was administered to prevent wheezing, difficulty breathing and chest tightness (Tr. 319).  An abscess on Plaintiff's back was lanced and drained on September 22, 2006 (Tr. 272).  On September 25, 2006 Plaintiff was given instructions for care of the area where the abscess was located (Tr. 257).

Plaintiff presented to MetroHealth on February 7, 2007, with complaints that his eyes showed a progressively diminished ability to focus (Tr. 245- 248).  On May 14, 2007, Plaintiff sought treatment for worsening back pain, a rash on his back and exacerbation of asthma (Tr. 229).  An antibiotic was prescribed to assist with resolving the rash (Tr. 230).  Plaintiff presented on May 22, 2207, with complaints of shortness of breath (Tr. 236).  Post-anterior and lateral chest X-rays administered failed to identify any acute infiltrates.  When compared to the previous examination, there was no significant change (Tr. 239).  On May 31, 2007, Plaintiff was treated for acute exacerbation of asthma, backache and irritation and swelling of the bottom of his foot.  He was instructed to take Motrin for the back and foot pain and strongly encouraged to stop smoking (Tr. 218).  Plaintiff was diagnosed with a hair follicle disease on July 9, 2007 (Tr. 215).

Plaintiff was treated twice at Lutheran Hospital. First, Plaintiff presented on May 2, 2006, with a first degree burn to his left bicep (Tr. 385, 387).  Second, Plaintiff was prescribed a left splint to manage wrist and thumb pain on May 30, 2006, (Tr. 381).

Plaintiff was treated for extreme left foot pain on January 10, 2008.  On May 15 and June 24, 2008, Plaintiff complained that the pain in his left foot was persistent (Tr. 168).  Plaintiff complained on June 24 and August 21, 2008, that the pain was present bilaterally.  During the August visit, a nerve pain medication was prescribed (Tr. 167).

On September 11, 2008, Plaintiff underwent a pulmonary function test, the results of which

suggested  combined obstruction and restrictive lung disease pattern.  There was a positive response to medication that dilated the bronchiole which suggests a reactive airway as in asthma (Tr. 169).

### v.  STANDARD OF DISABILITY

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920).  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively.  To assist clarity, the remainder of this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.*  A "severe impairment" is one which "significantly limits  . . .  physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

9

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.  *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)).  If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates.  *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

## VI.  ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings of fact after the hearing on remand:

> 1.  Plaintiff had not engaged in substantial gainful activity since June 4, 2007, the amended onset date.
>
> 2.  Plaintiff had two severe impairments:  chronic pulmonary insufficiency and asthma. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C. F. R Part 404, Subpart P, Appendix 1.
>
> 3.  Plaintiff had the RFC to perform light work except that he was able to stand and/or walk for about two hours in an eight hour workday, with normal breaks.  He had to be allowed to sit and stand alternately, at will, provided he was not off task for more than 10% of the work period.  Plaintiff had to avoid all exposure to pulmonary irritants such as fumes, odors, dust and gases.
>
> 4.  Plaintiff was capable of performing his past relevant work as a clerical/data entry clerk for Robert Half Corporation.  This work did not require the performance of work related activities precluded by the claimant's RFC.
>
> 4.  Plaintiff was not under a disability as defined in the Act since June 4, 2007.
>
> (Tr. 15-22).

## VII.  STANDARD OF REVIEW

The district court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *McClanahan, supra*, 474 F.3d 830 at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir. 1967)).  In fact the Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence.  *Id.* (*citing* 42 U.S.C. § 405(g )).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (*citing Besaw v. Secretary of Health and Human Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).  Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

### VIII.  PLAINTIFF'S POSITIONS.

1.      The ALJ erred by failing to find that the impairments of plantar fasciitis, depression, back pain and hand/wrist pain suffered by Plaintiff as severe impairments or the limitations imposed by each to be a severe impairment.

2.      The ALJ erred by failing to include the impairments of plantar fasciitis, depression, back pain and hand/wrist pain in a hypothetical question posed to the VE.

3       The ALJ erred in failing to evaluate the Plaintiff's pain symptoms.

4.      The ALJ erred by relying on the ME's assessment of Plaintiff's mental impairment.

11

5.      The ALJ erred by disregarding Dr. Felker's findings.

## IX. DEFENDANT'S POSITIONS

**1.**      Defendant contends that substantial evidence supports the ALJ's RFC and credibility findings and the weight attributed to the medical source opinions.

2.      The record substantially supports a finding that Plaintiff is not disabled.

## X. ANALYSIS

**1.      SEVERE IMPAIRMENTS**

Plaintiff contends that the ALJ failed to find that he suffered from severe impairments.

.      At Step two of the sequential evaluation, the fact finder must administer the severity test:

> (c) *You must have a severe impairment.*  If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c); 20 C. F. R. § 416.920(c) (Thomson Reuters 2010)

> A "non-severe impairment" is defined in 20 C.F.R. §§ 404.1521; 416.921 as follows:

> (a) *Non-severe impairment(s).*  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

> (b) *Basic work activities.*  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these abilities include-

>> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

a.      *Plantar fasciitis*

The evidence shows that Plaintiff complained of and was treated for foot pain with medication.

(Tr. 167-168).  The treating physician eventually prescribed a medication designed to treat nerve pain

12

(Tr. 167).  Plaintiff testified that he could not work because of the foot pain.  There is no objective evidence that the foot pain **significantly** interfered with Plaintiff's abilities and aptitude for work.

b.       *Depression.*

During a clinical interview, Plaintiff described himself to Dr. Felker as "depressed and irritable at times" (Tr. 360).  Dr. Felker diagnosed Plaintiff with depression.  She explained that Plaintiff was moderately limited in his capacity to deal with the general public and manage the stresses associated with employment.  Despite the depression, Plaintiff retained the ability to perform simple, routine, low-stress tasks in a work situation in which he did not have to interact directly with other workers (Tr. 350).  Neither of these diagnoses nor attendant limitations supports a finding that Plaintiff's depression **significantly** limited his physical or mental ability to do basic work activities.

c.       *Back Pain.*

Plaintiff made numerous complaints of back pain which were treated with nonsteroidal anti-inflammatory drugs (Tr. 179, 181, 189, 190, 197, 198, 200, 230).  These drugs did assist with the relief of pain (Tr. 230).  Plaintiff testified that he could not work because of the persistent back pain.  However, there is no objective medical evidence that the back pain was of the severity to **significantly** limit his physical or mental ability to do basic work activities

d.       *Hand/Wrist pain*.

Plaintiff complained that the pain in his hands/wrists was so pervasive as to exclude work.  On July 27, 2005, he experienced numbness and pain bilaterally in his digits which was attributed to cold weather.  By the end of his visit to the physician, the problem had resolved itself (Tr. 332).  Plaintiff complained of bilateral hand pain on August 8, 2006.  Medication was prescribed to address the pain issues (Tr. 196).  On December 29, 2006, Plaintiff complained of poly-joint pain including pain in his hands/wrists.  Motrin was prescribed to address the symptoms of pain (Tr. 252).  There is a lack of

objective medical evidence that links the episodic bouts of pain in Plaintiff's hands/wrists to an inability or lack of aptitude for work.

The Magistrate finds that the ALJ did not err by failing to find that the plantar fasciitis, depression, back pain and hand/wrist pain were of such significance as to limit Plaintiff's physical functions, his capacity to use his senses or his judgment, respond appropriately to people or deal with changes in a routine work setting.  Because the impairments themselves are not severe, the Magistrate cannot conclude that the limitations imposed by each impairment individually or collectively constitute a disability.

2.      ***Hypothetical Questions***

Plaintiff argues that one of the hypothetical questions posed to the VE failed to describe adequately all of his impairments.  Plaintiff contends that the failure to include these impairments is fatal to the VE's testimony and the ALJ's reliance on it.

Under *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " *Michael v. Astrue,* 2010 W L 2868177, *5 (N. D. Ohio 2010).  "If the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work."  *Id.* (*citing Lancaster v. Commissioner of Social Security,* 2007 WL 1228667, at *9 (6th Cir.2007)).  In formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he deems credible.  *Id.* (*citing Gant v. Commissioner of Social Security,* 2010 WL 1378427, at *3 (6th Cir. 2010) (*citing Stanley v.*

14

*Secretary of Health and Human Services,* 39 F.3d 115, 118-19 ( 6th Cir. 1994 )).  The three judge panel

in *Howard v. Commissioner*, however, determined that the hypothetical must focus on plaintiff's overall

state including the plaintiff's mental and physical maladies.  276 F. 3d 235, 239 (6th Cir. 2002).

The Sixth Circuit has not determined that a hypothetical must include all of the plaintiff's

limitations so long as substantial evidence supports the findings of the ALJ.  *Wix v. Astrue*, 2010 WL

520565, * 6 (W.D. Tenn. 2010) (*citing Varley,* 820 F. 2d at 779-780) (upholding the ALJ's reliance on

VE testimony that was predicated on a hypothetical that omitted reference to the claimant's need to

avoid noise and inability to cope with interpersonal contact, or his dizziness or hearing loss, but required

the VE to assume that plaintiff had to avoid exposure to extended loud noise and close contact with

coworkers and supervisors).  While it is true that the ALJ's hypothetical question must accurately

"portray" the plaintiff's individual physical and mental impairments, *Id.* (*citing Varley*, 820 F. 2d at

779), "portray" does not mean that every impairment of the claimant must be specifically enumerated,

so long as the ALJ incorporates the appropriate limitations based on those impairments into the

hypothetical. *Id. (citing Webb v. Commissioner*, 368 F. 3d 629, 633 (6th Cir. 2004) (reversing district

court's decision requiring that the ALJ's hypothetical list the plaintiff's arthritis, when only a plaintiff's

*limitations,* not medical *conditions,* are required to be listed in the hypothetical)).

The Magistrate agrees that the hypothetical questions did not enumerate all of Plaintiff's

impairments.  Under the prevailing case law, however, the hypothetical question need not incorporate

all of  Plaintiff's impairments.  The hypothetical questions framed by the ALJ did adequately

incorporate and accurately portray all of the **limitations** set forth in Plaintiff's RFC that were

substantiated by objective medical evidence.

3.      *Pain symptoms*.

15

Plaintiff challenges the ALJ's finding that the severe and debilitating nature of Plaintiff's pain symptoms is incredible.

Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which the claimant, his or her treating or non-treating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account in reaching a conclusion as to whether the claimant is disabled.   20 C. F. R §§ 404.1529(c)(3), 416.929 (c)(3) (Thomson Reuters 2010). Consideration will be given to all of the evidence presented, including information about the claimant's prior work record, statements about his or her symptoms, evidence submitted by the claimant's treating or non-treating source, and observations by SSA employees and other persons.  20 C. F. R. § § 404.1529(c)(3), 416. 929(c)(3) (Thomson Reuters 2010).  Factors relevant to the claimant's symptoms, such as pain, which will be considered include:

(i)    the claimant's  daily activities;
(ii)    the location, duration, frequency, and intensity of your pain or other symptoms;
(iii)    precipitating and aggravating factors;
(iv)    the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
(v)    treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)    any measures used or have used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)    other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C. F. R. §§ 404.1529(c)(3); 416.929(c)(3) (Thomson Reuters 2010).

In determining the extent to which symptoms, such as pain, affect the claimant's capacity to perform basic work activities, consideration will be given to all of the available evidence, including, the claimant's statements about the intensity, persistence, and limiting effects of the symptoms and the

16

claimant's statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether the claimant is disabled.  20 C. F. R. §§ 404.1529(c)(4), 416.929(c)(4) (Thomson Reuters 2010).  The fact finder will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, including the claimant's history, the signs and laboratory findings, and statements by your treating or non-treating source or other persons about how these symptoms affect the claimant. 20 C. F. R. §§ 404.1529(c)(4), 416.929(c)(4) (Thomson Reuters 2010).  The claimant's symptoms, including pain, will be determined to diminish the claimant's capacity for basic work activities to the extent that he or she alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C. F. R. §§ 404.1529(c)(4), 416.929(c)(4) (Thomson Reuters 2010).

After review of the record, the Magistrate is persuaded that the ALJ did analyze Plaintiff's complaints of pain as a symptom and she then took the symptoms into account in reaching a conclusion as to whether Plaintiff was disabled.  The record is replete with the relevant factors considered when assessing the impact of symptoms such as pain.  Initially, the ALJ referred to 20 C. F. R. § 416.929 and stated that she analyzed the symptoms consistent with this regulation (Tr. 20).  The ALJ then considered Plaintiff's daily activities of attending college, caring for his children and traveling to school (Tr. 20). In addition, the ALJ considered the location and intensity of Plaintiff's pain (Tr. 18, 19).  She considered that Plaintiff's pain was aggravated by physical activity such as running (Tr. 20).  The ALJ considered that the methods to achieve pain relief included over-the-counter nonsteroidal anti-inflammatory drugs and a suggestion that Plaintiff obtain gel inserts in his shoes to assist with the pain in his feet (Tr. 18). Finally, the ALJ explained that all of Plaintiff's symptoms, including pain, were considered based on

the requirements of 20 C. F. R. § 416.929.

The ALJ in this case determined that Plaintiff's pain was not significantly severe to be disabling. Since the ALJ complied with the regulation designed to assess symptoms such as pain and the result was supported by the evidence, the Magistrate cannot overrule that finding or reach an alternate conclusion. The evidence supports the ALJ's finding that Plaintiff's pain was not of the intensity, persistence or severity to be disabling by themselves or to prohibit the performance of work activities.

**4.** *The ME's Assessment of Emotional Impairment*.

Plaintiff argues that the ALJ erred in relying on the determination of a neurologist concerning his mental impairment.

The record shows that the ME was asked by the ALJ if he wanted to comment on Plaintiff's claimed psychiatric impairment. The ME responded that he did not think that the depression was important (Tr. 420). The ALJ did think that the medically determinable impairment of depression was important. She acknowledged it and considered it individually and in combination with other impairments (Tr. 19). The ALJ was persuaded that the effects of depression on Plaintiff's abilities to perform work activities was no more than minimal. Clearly the ALJ did not rely on the ME to assess the efficacy of Plaintiff's mental health on his functional capacities.

**5.** *Diagnosis of Depression*.

Plaintiff argues that the diagnosis of depression and the numerous limitations imposed by Drs. Felker and Waddell should not have been disregarded.

The Magistrate finds that the ALJ adopted Dr. Felker's diagnosis and did not disregard it. By doing so, she adopted Dr. Waddell's diagnosis. Both Drs. Felker and Waddell noted that Plaintiff was moderately inhibited from socializing or engaging others. These limitations, however, do not preclude

Plaintiff from working.

## XI.  CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court affirm the Commissioner's

decision and terminate the referral to the Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated:          January 11, 2011

## XII. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached

hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO,

as amended on December 1, 2009, any party may object to the report and recommendations within

fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the

fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for

such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on

the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed

findings, recommendations, or report to which objection is made and the basis for such objections.  Any

party may respond to another party's objections within fourteen days after being served with a copy

thereof.